UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KERVIN JEANTY,                                       :
               Plaintiff,                                  :
                                                            :
v.                                                   :
                                                            :   **OPINION AND ORDER**
PRECISION PIPELINE SOLUTIONS, LLC;                   :
JON SELANDER; CHARLES BROTHMAN;                      :   18 CV 7721 (VB)
ERIN LIVESEY; JOHN D'ANGELO; KEVIN                   :
BUTLER; JUSTIN MONK; and JOHN DOES                   :
##1–5,                                               :
               Defendants.                                :
--------------------------------------------------------------x

Briccetti, J.:

      Kervin Jeanty, proceeding pro se and in forma pauperis, brings this action against defendants Precision Pipeline Solutions, LLC ("Precision"); and Jon Selander, Charles Brothman, Erin Livesey, John D'Angelo, Kevin Butler, Justin Monk, and John Does ##1–5 (the "individual defendants").  Liberally construed, plaintiff's amended complaint alleges race and sex discrimination, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL").

      Now pending is defendants' motion to dismiss the amended complaint pursuant to Rule 12(b)(6).  (Doc. #28).

      For the following reasons, defendants' motion is GRANTED IN PART and DENIED IN PART.

      The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1367.

1

**BACKGROUND**

For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the amended complaint, and draws all reasonable inferences in plaintiff's favor, as summarized below.

I.  Employment at Precision's New Windsor Headquarters

Plaintiff alleges Precision hired him to work as a commercial driver and occasional laborer in June 2017. Plaintiff reported to Precision's headquarters in New Windsor, New York, weekdays at 6:30 a.m. to transport construction equipment to work sites, dump construction debris, and pick up materials.

Around July 31, 2017, plaintiff, who alleges he is African-American, Haitian, and Hispanic, alleges co-worker Justin Monk said to him, "[t]hey got us doing slave work," as the two employees spread grass seed and hay on a job. (Doc. #23 ("Am. Compl.") at 8).[1] Plaintiff further alleges around August 2, 2017, Monk climbed into plaintiff's truck as plaintiff was giving directions, "scratched his genitals, then grabbed and or tapped my arm," and climbed off the truck. (Id.).

Plaintiff alleges he reported Monk's comments and behavior to Jaclyn Tezgeldi, a human resources employee at Precision, on August 2. Tezgeldi allegedly told plaintiff he would "see results" by August 7, 2017. (Am. Compl. at 9). However, on August 7, a supervisor called plaintiff into his office, told plaintiff, "I don't need any pre madonnas [sic]," and terminated plaintiff. (Id. at 9). Plaintiff responded that he needed his job "and would do, what I have to do." (Id.). The supervisor allegedly told plaintiff he "doesn't like firing anyone" and to come

---

[1] "Am. Compl. at __" refers to page numbers automatically assigned by the Court's Electronic Case Filing system.

back to the office the next morning. But when plaintiff arrived the next morning, he was allegedly terminated by a second supervisor. (Am. Compl. at 9).

According to plaintiff, he then left a message for Tezgeldi inquiring about the company's grievance procedure. (Am. Compl. at 9). Another human resources employee at Precision, Erin Livesey, allegedly responded that the discharge would be investigated. Plaintiff alleges around August 14, 2017, Livesey reinstated plaintiff and told him he would be paid for the week he had missed after his termination. (Am. Compl. at 9).

II.     Employment at Precision's Facility in New Jersey

Plaintiff alleges upon his reinstatement, he reported to a new supervisor, John D'Angelo. D'Angelo informed plaintiff his new role would be to drive the company truck to New Jersey under the supervision of "Ozzy Doe." (Am. Compl. at 9). Further, according to plaintiff, he was not reimbursed for mileage, had to either ride with Ozzy or use his own car to return home each day, and had to arrive at work in New Jersey—which was over twice as far away (forty-five minutes) from plaintiff's home as Precision's headquarters in New Windsor—at 6:30 a.m.

In addition, plaintiff alleges the following incidents occurred in August and September 2017, while he worked in his new capacity at Precision's facility in New Jersey:

- A supervisor asked plaintiff what he thought about "fags and or gay people";

- Ozzy told plaintiff to "sweep a large portion of roadway" using a broom, even though another supervisor had said plaintiff could use machinery or a "sweeper" to complete the job;

- A co-worker talked about a "Hitler mustache" and "began doing a 'Nazi March'";

- Another co-worker told plaintiff to "help dig, using a dig bar, without rubber gloves or utility markings"; and

3

- Plaintiff discovered "drawings of male genitals" and "questionable 'Nazi (iron cross) related' graffity" on a portable toilet.

(Am. Compl. at 11) (capitalizations altered).

III. Termination

Plaintiff alleges he had to miss a few days of work in late August or early September 2017 to fix his vehicle, which had broken down. When he returned to work, he was allegedly "written up/disciplined and or verbal warning/reprimand" for missing work and for "taking time to dump" black top. (Am. Compl. at 12). Plaintiff allegedly was told he did not qualify as an active employee because he had not worked the previous day, and thus he was not entitled to holiday pay for Labor Day.

According to plaintiff, during the week of September 22, 2017, he was sent home early multiple days while his co-workers continued working. Around the same time, Butler and Livesey allegedly disciplined plaintiff for moving a truck on a "closed street/worksite" while its door was open "and or" backing up a truck without a spotter. (Am. Compl. at 13). Plaintiff alleges these activities were common practices within the company for which employees were not generally disciplined.

Plaintiff alleges he filed a complaint with the Occupational Safety and Health Administration (OSHA) in September 2017 because allegedly Butler had allowed a concrete cutting machine to operate without water, creating a lot of dust, and had told plaintiff to dig without proper utility markings.

Plaintiff alleges Livesey and D'Angelo terminated him on or about September 29, 2017. He allegedly grieved his termination on or about October 10, 2017, but never received a response.

**DISCUSSION**

I.  Rule 12(b)(6)

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion in an employment discrimination case, a plaintiff's "complaint . . . [need] not contain specific facts establishing a prima facie case of discrimination." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 569 (2007) (quoting Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002)). However, the complaint must meet a standard of "plausibility" and "provid[e] . . . fair notice of the nature of the claim [and] grounds on which the claim rests." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. at 556 n.3. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

The Court must liberally construe submissions of pro se litigants and interpret them "to raise the strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d

5

471, 474 (2d Cir. 2006) (per curiam) (internal quotation omitted) (collecting cases). Applying the pleading rules permissively is particularly appropriate when, as here, a pro se plaintiff alleges civil rights violations. Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted). Nor may the Court "invent factual allegations" a plaintiff has not pleaded. Id.

II.  Timeliness

Defendants argue the Court should dismiss plaintiff's amended complaint because it was docketed six days after the deadline the Court set for its filing.

The Court disagrees.

First, plaintiff dated his amended complaint December 26, 2018, two days before the Court's deadline. Second, given plaintiff's pro se status and the lack of any prejudice to defendants, the Court would not dismiss the amended complaint even if it were six days late. See Tracy v. Freshwater, 623 F.3d 90, 101 (2d Cir. 2010) ("It is well established that a court is ordinarily obligated to afford a special solicitude to pro se litigants").

III.  Substantive Claims

Plaintiff brings discrimination, hostile work environment, and retaliation claims under Title VII and the NYSHRL against all defendants. The standards for evaluating employment discrimination claims are identical under Title VII and the NYSHRL. Weinstock v. Columbia Univ., 224 F.3d 33, 42 n.1 (2d Cir. 2000). The Court will therefore analyze plaintiff's federal and state law claims concurrently.

Only plaintiff's retaliation claims survive.

A.      Discrimination

Defendants argue plaintiff fails to state a viable discrimination claim against any defendant.

The Court agrees.

Title VII prohibits an employer from discriminating "against any individual with respect to . . . compensation, terms, conditions, or privileges of employment, because of such individual's race . . . [or] sex."  42 U.S.C. § 2000e-2(a)(1).

To state a Title VII claim, a plaintiff must "allege two elements:  (1) the employer discriminated against him (2) because of his race, color, religion, sex, or national origin."  Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 85 (2d Cir. 2015) (citing 42 U.S.C. § 2000e–2(a)(1)).  "[A]t the pleadings stage of an employment discrimination case, a plaintiff has a minimal burden of alleging facts suggesting an inference of discriminatory motivation."  Id. (internal quotation omitted).  Namely, "a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination."  Id.

Here, plaintiff has not plausibly alleged his employer took adverse action against him in part for a discriminatory reason.  Only one of plaintiff's allegations relate to his race or sex—Monk's alleged comment that he and plaintiff were doing "slave work."  (Am. Compl. at 8).  But the Court cannot reasonably infer from plaintiff's allegations that Monk's comment was directed at plaintiff in a discriminatory manner.  Moreover, plaintiff does not allege Monk was a supervisor or an employee with authority to hire or fire other employees, and thus Monk's comment has little probative value regarding whether plaintiff's employer took adverse action

7

against him based on his sex or race. Indeed, plaintiff does not allege any supervisor made any discriminatory remarks, treated plaintiff differently from any other employee because of his race or sex, or engaged in a pattern of treating employees differently because of their race or sex.

Accordingly, plaintiff's discrimination claims are dismissed.

B. Hostile Work Environment

Liberally construed, the amended complaint asserts hostile work environment claims. Those claims also must be dismissed.

"To state a claim for a hostile work environment in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's [protected status]." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotations and alterations omitted). Ultimately, to survive a motion to dismiss, "a plaintiff need only plead facts sufficient to support the conclusion that she was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" Id. (quoting Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003)).

"[W]hether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry" that "should be assessed based on the totality of the circumstances." Patane v. Clark, 508 F.3d at 113–14 (internal quotation marks omitted). Salient factors include: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Id. at 113 (internal quotation omitted). "[E]ven if mean-

8

spiritedness or bullying render a workplace environment abusive, there is no violation of the law unless that mean-spiritedness or bullying is rooted in discrimination based on a protected characteristic." Watkins v. First Student, Inc., 2018 WL 1135480, at *15 (S.D.N.Y. Feb. 28, 2018) (internal quotation and alterations omitted).[2]

Here, plaintiff fails to allege his environment was objectively hostile or, even if it were, that it was made hostile because of plaintiff's protected status. Plaintiff alleges approximately five incidents over the course of his four-month employment at Precision that caused him to perceive his environment as hostile: (i) Monk's comment regarding performing "slave work"; (ii) Monk scratching his genitals and then touching plaintiff; (iii) a supervisor asking plaintiff what he thinks about "fags and or gay people"; (iv) a co-worker's comment about a Hitler moustache and his goose-stepping around; and (v) plaintiff's discovery of graffiti in a portable toilet. (Am. Compl. at 8, 11). These incidents are no more than episodic, and none of them is severe.

Moreover, only three of the alleged incidents could arguably be interpreted as based on plaintiff's alleged protected status: Monk's comment about slave work, Monk's scratching of his genitals, and plaintiff's discovery of graffiti in a portable toilet. But the Court cannot infer from the facts pleaded in the amended complaint that the two comments were aimed at plaintiff in a discriminatory manner. Moreover, the amended complaint offers no indication that the graffiti was drawn by a co-worker or directed at plaintiff.

Essentially, plaintiff complains of a workplace that does not meet his standards for civility. But Title VII "does not set forth a general civility code for the American workplace."

---

[2] Because plaintiff is proceeding pro se, he will be provided with copies of all unpublished opinions cited in this ruling. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

Redd v. N.Y. Div. of Parole, 678 F.3d 166, 176 (2d Cir. 2012) (citing Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006)).

Accordingly, plaintiff's hostile work environment claims are dismissed.

C.    Retaliation

Defendants argue plaintiff fails to state a retaliation claim against Precision because (i) plaintiff was rehired after being terminated around August 7, 2017, and paid for the week between that initial termination and plaintiff's rehiring, and (ii) plaintiff did not engage in a protected activity when complaining about transportation to and from his new job site after he was rehired.

The Court disagrees.

Title VII prohibits an employer from retaliating against an employee for opposing employment discrimination prohibited by Title VII. See 42 U.S.C. § 2000e-3(a). "The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. and Santa Fe Ry. v. White, 548 U.S. at 67. To state a claim for retaliation in violation of Title VII, a plaintiff must plausibly allege that: "(1) she participated in a protected activity known to the defendant; (2) the defendant took an employment action disadvantaging her; and (3) there exists a causal connection between the protected activity and the adverse action." Patane v. Clark, 508 F.3d at 115 (citing Feingold v. New York, 366 F.3d 138, 156 (2d Cir. 2004)).

Regarding the first element, an activity is considered protected under one of two clauses: (i) the "opposition clause," which proscribes an employer from retaliating against an employee "because she 'opposed any practice' made unlawful by Title VII"; and (ii) the "participation clause," which "makes it unlawful to retaliate against an individual because she 'made a charge,

10

testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under' Title VII." Littlejohn v. City of New York, 795 F.3d 297, 316 (2d Cir. 2015) (quoting Townsend v. Benjamin Enters., Inc., 679 F.3d 41, 48 (2d Cir. 2012)).

As for the second element, "[a]n adverse employment action is one which is more disruptive than a mere inconvenience or an alteration of job responsibilities." Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 85 (internal quotation omitted). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Id. (internal quotation omitted).

Regarding the third element, a plaintiff must plausibly allege the retaliation was a "but-for" cause of the employer's adverse action. Vega v. Hempstead Union Free Sch. Dist., 801 F.3d at 90. "[R]etaliatory purpose can be shown indirectly by timing: protected activity followed closely in time by adverse employment action." Id. The Second Circuit "has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action." Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d 545, 554 (2d Cir. 2001). However, "the temporal proximity must be 'very close.'" Riddle v. Citigroup, 640 F. App'x 77, 79 (2d Cir. 2016) (summary order) (quoting Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001)) (collecting cases).

Here, drawing all reasonable inferences in his favor, as the Court must at this early stage of the case, plaintiff plausibly alleges a retaliation claim for his termination in September 2017. Plaintiff allegedly engaged in protected activity by complaining at the end of July about Monk's

11

alleged comment regarding "slave work." (Am. Compl. at 8). Plaintiff claims he was terminated—plainly an adverse employment action—less than two months later, well within the time from which courts infer a retaliatory motive. See Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cty., 252 F.3d at 554 (collecting cases).

Accordingly, plaintiff has sufficiently stated a retaliation claim based upon his termination in September 2017.

IV. Individual Liability

The individual defendants argue plaintiff's claims against them should be dismissed because (i) Title VII does not recognize individual liability, and (ii) plaintiff has not met the standard for individual liability under the NYSHRL.

The Court agrees.

A. Title VII

Individual defendants, "even those with supervisory liability over the plaintiff," are not subject to personal liability under Title VII. Guerra v. Jones, 421 F. App'x 15, 17 (2d Cir. 2011) (summary order) (internal citations omitted).

Plaintiff's Title VII claims against the individual defendants are therefore dismissed.

B. NYSHRL

Plaintiff's NYSHRL claims against the individual defendants must also be dismissed.

The NYSHRL allows for individual liability when the defendant (i) has an "ownership interest" in the employer or authority to "hire or fire" employees, Tomka v. Seiler Corp., 66 F.3d 1295, 1317 (2d Cir. 1995), abrogated on other grounds by Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998); or (ii) aided or abetted conduct giving rise to a claim of discrimination or retaliation. N.Y. Exec. Law § 296(6). In either case, the defendant must actually have

participated in the conduct giving rise to the claim. See Feingold v. New York, 366 F.3d at 158. However, "an individual cannot aid and abet their own discriminatory conduct." Boonmalert v. City of New York, 721 F. App'x 29, 34 (2d Cir. 2018) (summary order).

Here, plaintiff's only surviving substantive claim arises from his termination at the end of September by Livesey and D'Angelo. Those two defendants are the only individuals who plaintiff alleges actually participated in that termination. But as a matter of law, Livesey and D'Angelo cannot aid and abet their own conduct. See Boonmalert v. City of New York, 721 F. App'x at 34.

Accordingly, plaintiff's NYSHRL retaliation claim against the individual defendants is dismissed.

**CONCLUSION**

The motion to dismiss is GRANTED IN PART and DENIED IN PART.

Plaintiff's retaliation claim against Precision based upon his termination in September 2017 may proceed. All other claims are dismissed.

Precision shall file an answer to the retaliation claim by August 15, 2019.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-4 (1962).

The Clerk is directed to (i) terminate the motion (Doc. #28) and (ii) terminate defendants Jon Selander, Charles Brothman, Kevin Butler, Justin Monk, John D'Angelo, Erin Livesey, and John Does ##1–5.

Dated: August 1, 2019
      White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge