```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
KERVIN JEANTY,                                                :
                            Plaintiff,                        :
                                                              :   OPINION AND ORDER
v.                                                            :
                                                              :   18 CV 7721 (VB)
PRECISION PIPELINE SOLUTIONS, LLC,                            :
                            Defendant.                        :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiff Kervin Jeanty, proceeding pro se and in forma pauperis, brings this action under Title VII of the Civil Rights Act of 1964 ("Title VII") and the New York State Human Rights Law ("NYSHRL"), alleging defendant Precision Pipeline Solutions, LLC, retaliated against him on account of his race and sex.[1]

Before the Court is defendant's unopposed motion for summary judgment. (Doc. #67).[2]

For the reasons set forth below, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

---

[1] By Opinion and Order dated August 1, 2019, the Court dismissed plaintiff's discrimination and hostile work environment claims and all claims against individual defendants. The Court allowed plaintiff's retaliation claims against the remaining defendant based upon his termination in September 2017 to proceed. (Doc. #39).

[2] By Order dated April 27, 2020, the Court gave plaintiff more than six weeks to respond to the motion for summary judgment and to file a cross-motion for summary judgment. (Doc. #66). Plaintiff failed to file an opposition or a cross-motion by the specified deadline. As a result, the Court sua sponte granted plaintiff, who is a sophisticated pro se litigant, a five-week extension of time to respond to the motion and file a cross-motion, and warned plaintiff that if he did not meet the new deadline (i) defendant's motion would be deemed fully submitted and unopposed, and (ii) plaintiff would not be granted a further extension of time to file a cross-motion. (Doc. #76). Plaintiff neither responded to the motion nor filed a cross-motion. Thus, by Order dated August 12, 2020, the Court deemed the motion fully submitted and unopposed, and ordered that plaintiff could not file a cross-motion. (Doc. #77).

1

**BACKGROUND**

Defendant has submitted a memorandum of law, a statement of material facts, and supporting affidavits, declarations, and exhibits, which together reflect the following factual background.

Plaintiff, who alleges he is African American, Haitian, and Hispanic, worked as a construction driver for defendant from June 14 to August 8, 2017, and again from August 15 to September 25, 2017. Plaintiff reported to work at defendant's headquarters in New Windsor, New York.

On June 14, 2017, plaintiff signed a form acknowledging receipt of defendant's "Employee & Supervisor Handbook," which included details of defendant's disciplinary policy. The disciplinary policy stated, in relevant part, that (i) employees were expected to report to their assigned work locations on time, (ii) employees must request planned absences two weeks in advance, and otherwise inform their supervisor of an absence before a shift start, and (iii) if an employee failed to show up for work or call their supervisor, they would be terminated. It also provided a list of different types of conduct, categorized from Tier 1–4, that could lead to disciplinary consequences, including termination.

During his first period of employment with defendant, from June 14 to August 8, 2017, plaintiff was assigned to several job sites, including one supervised by Kevin Hennessy and one supervised by a person named Wilbur. Hennessy attested that plaintiff was consistently delayed in transporting materials and that on at least one occasion, he saw plaintiff loading his dump truck in a manner that suggested plaintiff was inexperienced and unskilled in operating the equipment. Plaintiff testified that Wilbur also believed plaintiff was taking too long to transport

materials to and from job sites. However, plaintiff testified his transportation delays were caused by a tarp malfunction on his truck.

According to plaintiff, around July 31, 2017, his co-worker Justin Monk said to him, as the two employees spread grass seed and hay on a job, "[t]hey got us doing slave work." (Doc. #23 ("Am. Compl.") at ECF 8–9).³ Plaintiff further alleges around August 2, 2017, Monk climbed into plaintiff's truck as plaintiff was giving directions, "scratched his genitals, then grabbed and or tapped my arm," and climbed off the truck. (Id. at ECF 8; see Doc. #71 ("Jeanty Tr.") at 70–73).⁴

On August 2, 2017, plaintiff reported to Jaclyn Tezgeldi, a human resources employee, that Monk had scratched himself and then grabbed or tapped plaintiff's arm. By his own admission, plaintiff did not report Monk's "slave work" comment to Tezgeldi.

On August 8, 2017, defendant terminated plaintiff for failure to transport materials to and from job sites in a timely manner.

On August 15, 2017, defendant discovered a problem with the tarp on the dump truck assigned to plaintiff and reinstated plaintiff's employment. Plaintiff was then assigned to a different job site supervised by superintendent John D'Angelo and foreman Kevin Butler.

According to defendant, plaintiff was absent on four consecutive days from August 29 to September 1, 2017. Although plaintiff testified he was not absent these days, he also testified he did not have proof to counter defendant's records noting the four-day absence. As a Tier 4 violation of defendant's disciplinary policy, plaintiff's four-day absence was sufficient grounds

---

³ "ECF __" refers to the page numbers automatically assigned by the Court's Electronic Case Filing system.

⁴ Citations to "Jeanty Tr. at _" refer to the page number on the top right-hand corner of each transcript page.

for defendant to immediately terminate plaintiff.  However, instead of terminating plaintiff, defendant issued plaintiff a written warning on September 4, 2017, advising plaintiff that future absences needed to be pre-approved and warning him that a further policy violation could result in his termination.

On September 18, 2017, plaintiff left work three hours early without prior supervisory approval, which was a Tier 2 violation of defendant's policy.

On September 20, 2017, Butler asked plaintiff to perform truck maintenance within plaintiff's job description, but plaintiff refused.  According to defendant, such insubordination was a Tier 2 violation of the disciplinary policy.

On September 21, 2017, plaintiff removed safety handles from the door of a "skid steer" (a motorized piece of construction equipment) and lost the pins that attached the safety handles.  According to Butler, plaintiff was not authorized to be in the skid steer, and there was no reason for plaintiff to have removed the handles.  The skid steer could not be used until fixed.  Such damaging of equipment was a Tier 3 violation of defendant's disciplinary policy.

On September 25, 2017, Butler saw plaintiff drive off a construction site and onto a main road with the back of his box truck open and several items positioned to fall off the back of the truck.  Butler then saw plaintiff back up his dump truck without a spotter.  Although Butler directed plaintiff to stop the truck and secure the items, plaintiff refused.  According to defendant, plaintiff's actions were insubordinate, endangered plaintiff, his co-workers, and passersby, and constituted a Tier 4 violation of defendant's disciplinary policy, thus resulting in plaintiff's termination.

4

## DISCUSSION

I.    Standard of Review

The Court must grant a motion for summary judgment if the pleadings, discovery materials before the Court, and any affidavits show there is no genuine issue as to any material fact and it is clear the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

A fact is material when it "might affect the outcome of the suit under the governing law. . . . Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).[5]

A dispute about a material fact is genuine if there is sufficient evidence upon which a reasonable jury could return a verdict for the non-moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. The Court "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." Wilson v. Nw. Mut. Ins. Co., 625 F.3d 54, 60 (2d Cir. 2010). It is the moving party's burden to establish the absence of any genuine issue of material fact. Zalaski v. City of Bridgeport Police Dep't, 613 F.3d 336, 340 (2d Cir. 2010).

If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, then summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. at 322–23. If the non-moving party submits "merely colorable" evidence, summary judgment may be granted. Anderson v. Liberty Lobby, Inc., 477 U.S. at 249–50. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation."

---

[5] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

5

Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011).  The mere existence of a scintilla of evidence in support of the non-moving party's position is likewise insufficient; there must be evidence on which the jury reasonably could find for him.  Dawson v. County of Westchester, 373 F.3d 265, 272 (2d Cir. 2004).

On summary judgment, the Court construes the facts, resolves all ambiguities, and draws all permissible factual inferences in favor of the non-moving party.  Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).  If there is any evidence from which a reasonable inference could be drawn in the non-movant's favor on the issue on which summary judgment is sought, summary judgment is improper.  Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 83 (2d Cir. 2004).

In deciding a motion for summary judgment, the Court need consider only evidence that would be admissible at trial.  Nora Beverages, Inc. v. Perrier Grp. of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998).  The burden to proffer admissible evidence applies "equally to pro se litigants."  Varughese v. Mt. Sinai Med. Ctr., 2015 WL 1499618, at *4 (S.D.N.Y. Mar. 27, 2015) (citing Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001)).[6]  Accordingly, bald assertions, completely unsupported by admissible evidence, are not sufficient to overcome summary judgment.  Carey v. Crescenzi, 923 F.2d 18, 21 (2d Cir. 1991).

II. Retaliation Claims

Defendant argues it is entitled to summary judgment on plaintiff's Title VII and NYSHRL retaliation claims because plaintiff has not offered any evidence of pretext for defendant's proffered legitimate, non-discriminatory reason to terminate him.

---

[6] Plaintiff will be provided copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

The Court agrees.

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII's anti-retaliation provision "forbids employer actions that 'discriminate against' an employee (or job applicant) because he has 'opposed' a practice that Title VII forbids." Burlington N. & Santa Fe Ry. v. White, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)).

The familiar three-step McDonnell Douglas burden-shifting framework applies to plaintiff's Title VII retaliation claim. See Littlejohn v. City of New York, 795 F.3d 297, 312, 316 (2d Cir. 2015). Claims under Title VII and the NYSHRL are analyzed under the same framework. Weinstock v. Columbia Univ., 224 F.3d at 42 n.1.

Under the McDonnell Douglas framework, a plaintiff must first establish a prima facie case of retaliation. Weinstock v. Columbia Univ., 224 F.3d 33, 42 (2d Cir. 2000). To establish a prima facie case, plaintiff must show (i) he engaged in a protected activity; (ii) the employer was aware of this activity; (iii) the employer took adverse employment action against him; and (iv) a causal connection exists between the alleged adverse action and the protected activity. Zann Kwan v. Andalex Grp. LLC, 737 F.3d 834, 844 (2d Cir. 2013).

Once a plaintiff presents a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse action. Weinstock v. Columbia Univ., 224 F.3d at 42. If a defendant meets this burden, the plaintiff must then point to evidence that would be sufficient to permit a rational factfinder to conclude the employer's explanation is merely a pretext for actual discrimination or retaliation. Id.

To satisfy the burden of showing pretext on summary judgment, a plaintiff must "produce not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, non-discriminatory reasons proffered by the defendant were false, and that more likely than not discrimination was the real reason for the employment action." Weinstock v. Columbia Univ., 224 F.3d at 42. "In short, the question becomes whether the evidence, taken as a whole, supports a sufficient rational inference of discrimination." Id.

"The temporal proximity of events may give rise to an inference of retaliation for the purposes of establishing a prima facie case of retaliation under Title VII, but without more, such temporal proximity is insufficient to satisfy [plaintiff's] burden to bring forward some evidence of pretext." El Sayed v. Hilton Hotels Corp., 627 F.3d 931, 933 (2d Cir. 2010).

Here, even assuming plaintiff has adduced evidence to establish a prima facie case of retaliation, the record evidence would not allow a rational factfinder to conclude defendant's proffered non-discriminatory, legitimate reason for firing him was pretext. Indeed, defendant has submitted evidence indicating plaintiff took numerous actions in violation of defendant's disciplinary policy, including unexcused absences, leaving early without approval, insubordination, damaging equipment, and endangering himself, his co-workers, and passersby. Moreover, plaintiff has not offered any evidence in response, despite being notified, in accordance with Local Civil Rule 56.2, that his case could be dismissed if he did not respond to defendant's motion with evidence contradicting the material facts asserted by defendant. (Doc. #75, Notice to Pro Se Litigants). Accordingly, having construed the facts, resolved all ambiguities, and drawn all permissible factual inferences in plaintiff's favor, the Court concludes

as a matter of law that plaintiff is unable to prevail on his retaliation claims under Title VII and the NYSHRL.

## CONCLUSION

The motion for summary judgment is GRANTED.

The Clerk is instructed to terminate the motion and close this case.  (Doc. #67).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

The Court will mail a copy of this Opinion and Order to plaintiff at the address on the docket.

Dated:  February 24, 2021
        White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge